<u>NOT FOR PUBLICATION</u>                                                      (Docket No. 86)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

—————————————————— :
TRICO EQUIPMENT, INC.,                    :
                                          :
                        Plaintiff,        :        Civil No. 08-5561 (RBK/KMW)
                                          :
            v.                            :        **OPINION**
                                          :
WILLIAM MANOR,                            :
                                          :
                        Defendant.        :
—————————————————— :

**KUGLER**, United States District Judge:

This matter arises out of the alleged breach of a covenant not to compete.  Presently before the Court is the unopposed Motion for Summary Judgment filed by Plaintiff Trico Equipment, Inc. ("Trico").  For the reasons discussed below, the motion is granted in part and denied in part.

**I.     BACKGROUND**

The Court previously reviewed this case's background, so only a brief factual update is required.  <u>See</u> <u>Trico Equipment, Inc. v. Manor</u>, No. 08-5561, 2009 U.S. Dist. LEXIS 50524, at *3-*6 (D.N.J. June 15, 2009).  After Manor discontinued his employment with Trico, he accepted a position with Skyworks – a Trico competitor.  (Doc. No. 41 ¶ 26).  During the interview process with Skyworks, Manor informed the owner of Skyworks that he signed a covenant not to compete with Trico that prohibited him from working in the geographic area he covered while employed with Trico.  Although Manor informed Skyworks of his contract with Trico, Skyworks assigned him to work in the area he covered while employed with Trico.

Skyworks paid Manor an annual salary of $75,000.00.  (Id. ¶ 33).

During his employment with Skyworks, Manor called upon numerous Trico customers.
(Doc. No. 41 ¶31).  Manor knew that calling on Trico customers would create an issue with
Trico because of his covenant not to compete with Trico.  Id.  Moreover, Manor admitted that
but for the preliminary injunction issued by this Court on June 15, 2009, he would have
continued to solicit business from Trico customers.  (Pl.'s Br. Ex. 2, at 69, 79).  Manor also
shared some of Trico's confidential customer information with Skyworks, including Trico's
strategies for managing customer relationships.  (Pl.'s Br. Ex. 2, at 102).

During the year after Manor resigned from Trico and commenced employment with
Skyworks, Trico experienced a total of $1,118,000.00 in lost profits from several customers in
the area previously serviced by Manor.  (Pustizzi Decl. ¶¶ 3, 6).  Trico claims that this decline is
attributable to Manor's work for Skyworks in the area for which he was responsible during his
employment with Trico.  (Id. ¶ 4).  Trico computed lost profits based upon the lost revenue from
rentals in Manor's territory less the overhead of maintaining, servicing and/or transporting
equipment to each customer's site.  (Id.).  Trico claims that it had the equipment in its inventory
necessary to equip any customer in Manor's territory during this period.  (Id. ¶ 7).

On June 15, 2009, this Court entered an injunction against Manor.  (Doc. No. 42).
Shortly thereafter, Skyworks terminated Manor's employment.  (Pustizzi Decl. ¶ 9).  After
Manor's termination, Trico has steadily recovered customers that departed from Skyworks
because of Mr. Manor's actions.  (Id. ¶ 10).

As a result of this litigation, Trico incurred legal fees and expenses in the amount of
$184,857.46.

II.     STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  Corliss v.

Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.    DISCUSSION[1]

### A. Trico's Breach of Contract Claims

In the Complaint, Trico brought a breach-of-contract claim against Manor. On November 13, 2009, Trico filed its Amended Complaint. The Amended Complaint alleges that Manor breached the Employment Agreement by: (1) working for a direct competitor during the two-year period following his employment with Trico; (2) soliciting customers in his territory on behalf of a competitor for a period of two years following his separation from Trico; and (3) improperly using Trico's confidential customer information. (Am. Compl. ¶¶ 94-97, 98-104, 105-110).

A breach-of-contract claim under New Jersey law requires proof of three elements: "a valid contract, defective performance by the defendant, and resulting damages." Coyle v. Englander's, 488 A.2d 1083, 1088 (N.J. Sup. Ct. App. Div. 1985). The oft-repeated elements of

---

[1] Manor and Trico agreed in paragraph 11 of the Non-Compete, Non-Solicitation and Confidentiality Agreement that it "shall be interpreted under the laws of the State of New Jersey." As a federal court sitting in diversity, this court must apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

New Jersey courts rely upon Section 187 of the Restatement (Second) of the Conflict of Laws in determining whether to enforce a choice of law clause. Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 481 A.2d 553, 555-56 (N.J. Super. Ct. App. Div. 1984), aff'd 486 A.2d 334 (N.J. 1985). Neither of the Section 187 exceptions applies here. New Jersey has a substantial relationship to the parties and their relationship. It is the headquarters of Plaintiff, and Virginia does not have a materially greater interest than New Jersey in the determination of this case as its only connection is that it is the domicile of Defendant.

a basic contract are offer, acceptance, and consideration.  See Smith v. SBC Commc'ns, Inc., 839 A.2d 850, 861 (N.J. 2004).

The Court finds that Trico satisfied all of the elements of a claim for breach of contract. First, as the Court stated in its Opinion dated June 15, 2009, "there is no dispute that there is a written contract," between Trico and Manor.  (Doc. No. 41, at 10).  The Employment Agreement is a contract that outlines the duties and obligations of the parties.  Second, the facts in the record demonstrate that Manor breached the Employment Agreement by:  (1) working for Skyworks during the two-year period immediately following his employment with Trico, (Doc. No. 41 ¶ 31); (2) soliciting Trico customers during his employment with Skyworks, (Id.); and (3) improperly disclosing confidential information to Skyworks such as Trico's strategies for managing customer relationships, (Pl.'s Br. Ex. 2, at 100-102).  Finally, as the Court stated in its Opinion on June 15, 2009, "Trico has demonstrated it is damaged as a result [of Manor's breach]."  (Doc. No. 41, at 10).  Trico suffered lost business and lost revenue to Skyworks in the year after Manor's departure.  Therefore, the Court finds that Trico is entitled to summary judgment on the breach of contract claims.

**B.  The Economic Loss Doctrine**

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."  Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002).  In effect, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties."  State Capital Title & Abstract Co. v. Business Services, LLC et al., 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (citing Capitalplus Equity, LLC v. Prismatic Dev. Corp., No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008) (citation

omitted)).  One court provided the following explanation of the economic loss doctrine in the context of a common law claim for fraud in the inducement:  "a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement.  State Capital Title & Abstract Co., 646 F. Supp. 2d at 676 (citing Metex Mfg. Corp. v. Manson, No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)).  The rationale for the economic loss doctrine is that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have addressed in their agreement."  Bubbles N 'Bows, LLC v. Fey Pub. Co., No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007).

### 1.  Misappropriation of Trade Secrets and Confidential Information

In New Jersey, in order to succeed on a claim for misappropriation of trade secrets, a plaintiff must show that:  "(1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence by [the] plaintiff to the employee; (3) the secret was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of [the] plaintiff."  Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429-30 (3d Cir. 1982).  In order to determine whether a trade secret exists, New Jersey has adopted the definition of "trade secret" provided by the Restatement of Torts:  "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  Id. at 431.

The Court finds that because the allegations giving rise to Trico's misappropriation of trade secrets claim are not separate and distinct from Trico's breach of contract claims, Trico's misappropriation claim is barred by the economic loss doctrine.  Trico's moving brief states that "Manor disclosed confidential information related to Trico's pricing policies, terms and conditions, customer lists, and advertising and marketing techniques to Skyworks . . . in breach of the confidence with which the information was communicated to him. . . . Manor used this secret information to Trico's detriment by soliciting former Trico customers and converting Trico customers to become customers of Skyworks."  (Pl.'s Br., at 24).  Paragraph 4 of the Confidentiality Agreement provides:  "I covenant and agree to hold all of the foregoing trade secrets, confidential information and proprietary materials in the strictest confidence and shall not disclose, divulge or reveal the same to any person or entity during the term of my employment with the Company or at any time thereafter."  (Pl.'s Br. Ex. 9 ¶ 4).  Thus, the same disclosure of confidential information that forms the basis of Trico's breach of contract claim also forms the basis of Trico's claim for misappropriation of trade secrets; namely the fact that Manor disclosed confidential information in violation of the Confidentiality Agreement, and used secret information to Trico's detriment in violation of the covenant not to compete. Therefore, because the underlying conduct for Trico's breach of contract claim is identical to Trico's misappropriation of trade secrets claim, the Court finds that Trico's misappropriation claim is barred by the economic loss doctrine.

### 2.  Tortious Interference with Prospective Economic Advantage

To succeed on a claim of tortious interference with prospective economic advantage, a plaintiff must prove:  (1) the plaintiff has a reasonable expectation of economic advantage; (2) the interference or harm was done intentionally and with "malice"; (3) the interference caused

the alleged loss of prospective economic gain; and (4) the injury caused damages.  <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 563 A.2d 31, 37 (N.J. 1989).  However, it is "fundamental" to any cause of action for tortious interference "that the claim be directed against defendants who are not parties to the relationship."  <u>Id.</u>  As the New Jersey Supreme Court held in <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, "[t]ortious interference developed under common law to protect parties to an existing or prospective contractual relationship from outside interference."  <u>Id.</u>  Thus, "where a person interferes with the performance of his or her own contract, the liability is governed by the principles of contract law."  <u>Id.</u>

The Court finds that the economic loss doctrine bars Trico's claim of intentional interference with prospective economic advantage.  Plaintiff's tortious interference claim lacks any allegations that are separate and distinct from Manor's breach of contract claim.  Under the express terms of the Employment Agreement, Manor is barred from disclosing trade secrets and confidential information during and after his employment with Trico, and soliciting Trico customers for a two-year period after the termination of his employment.  (Pl.'s Br. Ex. 9 ¶ 4).  In the moving brief, Plaintiff argues that "[b]y poaching and flipping customers from Trico to Skyworks and disclosing and using confidential information relating to Trico's business policies and strategy, Manor interfered wrongfully, intentionally and without justification with Trico's prospective economic advantage."  (Pl.'s Br., at 27).  Manor's conduct clearly violated both the Confidentiality Agreement and covenant not to compete he signed with Trico.  Because the economic loss doctrine bars any tort claim based upon the conduct giving rise to Trico's breach of contract claim, the Court will deny Trico's motion for summary judgment on the intentional interference claim.

### 3. Unfair Competition

In New Jersey, "unfair competition is a business tort." New Jersey Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 365 A.2d 956, 965 (N.J. Super. Ct. Ch. Div. 1976), aff'd, 388 A.2d 1299 (N.J. Super. Ct. App. Div. 1978). "Generally, [unfair competition] consists of the misappropriation of one's property by another-property which has some sort of commercial or pecuniary value." Id. "The misappropriation usually takes the form of 'palming off' or 'passing off' another's goods as your own, although this Modus operandi is not essential." Id. Importantly, the key to the tort of unfair competition "is misappropriation of property of commercial value." Hoffman-La Roche Inc. v. Genpharm Inc., 50 F. Supp. 2d 367, 380 (D.N.J. 1999) ("The misappropriation of a trade secret constitutes unfair competition under New Jersey law . . . ."); see Duffy v. Charles Schwab & Co., Inc., 97 F. Supp. 2d 592, 601 (D.N.J. 2000). Thus, a plaintiff who successfully proves the elements of a cause of action for misappropriation of a trade secret also states a cause of action for unfair competition. Id.

The Court finds that Trico's claim of unfair competition is barred by the economic loss doctrine. Trico claims that "[t]he undisputed evidence shows that while employed by Trico, Manor interfered with Trico's business relations and breached his duty to not compete with Trico's business by soliciting his customers to benefit a direct competitor, Skyworks." (Pl.'s Br., at 28). Trico further argues that "[t]he immediacy of [Trico's] business loss[es] in conjunction with Manor's resignation and new employment demonstrated that he had begun soliciting customers for Skyworks's benefit prior to his resignation from Trico." (Id.). To support the breach of contract claim, Trico states: "As demonstrated at the hearings in this matter and by Manor's own admissions, Plaintiff had substantial evidence to support its allegations that Manor breached the restrictive covenants by soliciting former customers and using Trico's confidential

information to its competitor's advantage." (Id. at 21).  Trico's unfair competition claim is based

on the same conduct that gave rise to Trico's breach of contract claim – the fact that Manor

breached the covenant not to compete and the confidentiality agreement by soliciting former

Trico customers and using Trico confidential information to Skyworks's advantage.  Therefore,

the economic loss doctrine bars Trico's unfair competition claim.

### 4. Breach of the Duty of Loyalty

Under New Jersey law, every "employee owes a duty of loyalty to [his] employer . . . ."

Auxton Computer Enter., Inc. v. Parker, 416 A.2d 952, 965 (N.J. Super. Ct. App. Div. 1980).

The duty requires that "the employee must not, while employed, act contrary to the employer's

interests." Id.  However, "[t]he scope of the duty of loyalty that an employee owes to an

employer may vary with the nature of their relationship.  Employees occupying a position of

trust and confidence, for example, owe a higher duty than those performing low-level tasks."

Cameco, Inc. v. Gedicke, 724 A.2d 783, 789 (N.J. 1999).   For example, "[a]ssisting an

employer's competitor can constitute a breach of the employee's duty of loyalty." Id.  The

seriousness of an employee's conduct determines whether there is a breach of the duty of loyalty.

Id.  In cases where the employee offers substantial assistance to a competitor, the employee will

be liable for breach of duty of loyalty.  Id.

Manor's breach of the duty of loyalty claim is barred by the economic loss doctrine.  The

evidence demonstrates that Manor intentionally referred one of Trico's customers to a direct

competitor.  While still employed at Trico (and shortly before his resignation) Manor

recommended that Dean Steel, a Trico customer, take some of its business to Skyworks, even

though Dean placed an equipment order with Trico.  (Doc. No. 41 ¶ 26). Manor testified that he

made the recommendation because Dean was "disappointed" with Trico and unhappy with the

condition of the Trico equipment.  (Id.).  Manor never informed any of his superiors that Dean

was dissatisfied with Trico's service or that he referred Dean to Skyworks.  (Id. ¶ 27).

Moreover, Manor knew that Trico would have attempted to satisfy Dean's requests had they

been informed about them.  (Id.).  Dean eventually replaced Trico equipment with Skyworks

equipment.  The non-compete clause in Manor's contract with Trico provides:  I covenant and

agree that as long as I am employed by [Trico] . . . I shall not, directly or indirectly, . . . act as an

employee of, or consultant advisor, or contractor to, any existing or proposed entity engaged . . .

in the same or similar business as [Trico] . . . ."  (Id. ¶ 8).  Because Manor advised Skyworks to

take its business to one of Trico's competitors, Manor breached his contractual obligation.

Therefore, Manor cannot bring a claim for breach of the duty of loyalty.  See State Capital Title

& Abstract Co., 646 F. Supp. 2d at 678 (finding that economic loss doctrine bars plaintiff's state

breach of the duty of loyalty claim).  Accordingly, Trico's request for summary judgment on its

breach of the duty of loyalty claim is denied.

### 5. Breach of the Covenant of Good Faith and Fair Dealing

In New Jersey, "every contract . . . contains an implied covenant of good faith and fair

dealing."  Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997).  This covenant

demands that "neither party shall do anything which will have the effect of destroying or injuring

the right of the other party to receive the fruits of the contract . . . ."  Id. (internal quotations

omitted).  "A party to a contract breaches the covenant if it acts in bad faith or engages in some

other form of inequitable conduct in the performance of a contractual obligation."  Black Horse

Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000) (citing Sons of

Thunder, Inc., 690 A.2d at 589); Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 248 (D.N.J.

1996) (stating that courts "imply a covenant of good faith and fair dealing in order to protect one

party to a contract from the other party's bad faith misconduct or collusion with third parties where there is no breach of the express terms of the contract").

An essential element of any claim for breach of the covenant of good faith and fair dealing is proof of "bad motive or intention." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005). Thus, "[t]he party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Id. (citing 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)).

However, "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 788 A.2d 268, 280 (N.J. 2002). Thus, "mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." Skypala v. Mortgage Elec. Registration Sys. Inc., 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (citing Saltiel, 788 A.2d at 280-81).

Here, Trico's claim for breach of the covenant of good faith and fair dealing is barred by the economic loss doctrine. Prior to working with Trico, Manor signed a covenant not to compete. The covenant not to compete prohibits Manor from working for a direct competitor of Trico for a period of twenty-four months after the end of his employment with Trico. (Doc. No. 41 ¶ 8). The covenant also prohibits Manor from soliciting any of Trico's customers in the territorial area he covered during his employment with Trico. (Id. ¶ 9). In exchange for Manor's services, Trico compensated him handsomely – providing him an annual salary of $112,934.66, $106,787.62, and $81,852.00 during 2006, 2007, and 2008, respectively. (Id. ¶ 15). However,

notwithstanding the clear prohibitions in Manor's contract, after terminating his employment

with Trico, Manor immediately began working for one of Trico's competitors and soliciting

Trico customers.  Moreover, Manor testified that if the Court did not enjoin him from soliciting

Trico customers in violation of his agreement with Trico, he would continue to do so.  (Pl.'s Br.

Ex. 2, at 71:16 – 72:4).  Manor's actions constituted a clear breach of his agreement with Trico.

Because Manor's actions were a breach of his agreement with Trico, the Court holds that Trico's

request for summary judgment on the breach of the covenant of good faith and fair dealing claim

is denied.

### 6.  Unjust Enrichment

In New Jersey, "[t]o establish [a claim of] unjust enrichment, a plaintiff must show both

that [the] defendant received a benefit and that retention of that benefit without payment would

be unjust."  Cameco, Inc. v. Gedicke, 690 A.2d 1051, 1059 (N.J. Super. Ct. App. Div. 1997)

(citing VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994)).  "The unjust

enrichment doctrine requires that the plaintiff show that it expected remuneration from the

defendant at the time it performed or conferred a benefit on [the] defendant and that the failure of

remuneration enriched [the] defendant beyond its contractual rights."  Id.  However, where a

valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust

enrichment.  See Van Orman v. Am. Ins. Co., 680 F.2d 301, 311 (3d Cir. 1982); Caputo v. Nice-

Pak Prods., Inc., 693 A.2d 494, 498 (N.J. Super. Ct. App. Div. 1997) ("Because unjust

enrichment is an equitable remedy resorted to only when there was no express contract providing

for remuneration, a plaintiff may recover on one or the other theory, but not both.").

The Court finds that because Plaintiff is entitled to summary judgment on the breach of

contract claim, Plaintiff cannot simultaneously recover for unjust enrichment.  In their moving

brief, Plaintiff argues that "Trico paid Manor his full compensation through his last date of employment," but "subsequently discovered from its review of the GPS system that Manor was not working on Trico business for all the time Manor reported he had been working." (Pl.'s Br., at 26). Plaintiff argues that it is entitled to equitable relief because Manor received full compensation despite failing to perform under the terms of the contract. As previously mentioned, a party may not recover for both unjust enrichment and breach of contract. Van Orman, 680 F.2d at 311. Therefore, because Plaintiff cannot recover for both breach of contract and unjust enrichment for the same conduct, Plaintiff's motion for summary judgment on the unjust enrichment claim is denied.

### 7. Civil Conspiracy

In New Jersey a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Poplar N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005) (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993), certif. denied, 640 A.2d 850 (N.J. 1994)). The "gist of the [conspiracy] claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Morgan, 633 A.2d at 998 (quoting Bd. of Educ. v. Hoek, 183 A.2d 633, 646 (1962)). Moreover, the plaintiff need not prove that each participant in the alleged conspiracy was aware of the "'exact limits of the illegal plan or the identity of all participants.'" Morgan, 633 A.2d at 999 (quoting Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971)). To establish a conspiracy, "it simply must be shown that there was 'a single plan, the essential nature and general scope of which [was] known to each person

14

who is to be held responsible for its consequences.'" Id. (quoting Hoffman-LaRoche, Inc., 447 F.2d at 875).

However, in order to succeed on a civil conspiracy claim, the plaintiff must assert an underlying tort claim.  See Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998) ("A civil action for conspiracy is essentially a tort action.").  Thus, "there can be no action in civil conspiracy for breach of contract or unjust enrichment because neither claim sounds in tort."  Doherty v. The Hertz Corp., No. 10-359, 2010 WL 4883487, at *8 (D.N.J. Nov. 24, 2010) (emphasis added); Cf. Slim CD, Inc. v. Heartland Payment Sys., Inc., No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (noting that "the economic loss doctrine bars a claimant from recovering in tort economic losses to which it is entitled only by contract.").

The Court finds that Trico's civil conspiracy claim fails as a matter of law.  In support of its civil conspiracy claim, Trico argues that Manor "agreed with Skyworks to engage in improper, competitive conduct, including competition in his Trico territory and solicitation of Trico customers in violation of his Employment Agreement."  (Pl.'s Br., at 29) (emphasis added).  Both of those allegations derive from Manor's contract with Trico.  Because there is no cause of action for civil conspiracy for a breach of contract, Trico's civil conspiracy claim fails.  Accordingly, the Court will deny summary judgment on Trico's civil conspiracy claim.

## C.  Trico's Other State Law Claims

### 1.  Destruction of Evidence

New Jersey does not recognize a cause of action for destruction of evidence.  See Rosenblit v. Zimmerman, 766 A.2d 749, 756 (N.J. 2009) (holding that New Jersey does not recognize a cause of action for destruction of evidence because the spoilage of evidence prior to or during litigation is "remedial under existing tort principles.").  Therefore, the Court denies

Trico's motion for summary judgment on its destruction of evidence claim.

### 2.  Conversion

In New Jersey, "the tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enter. Recycling, Inc. v. Bercaw, 968 A.2d 468, 472 (N.J. Super. Ct. App. Div. 2005).  In order to prove a case of conversion, a plaintiff must show "an affirmative act on the part of the defendant"; not mere negligence.  Friedman Sigelbaum, LLP v. Pribish, 2009 WL 910326, at *12 (N.J. Super. Ct. App. Div. Apr. 07, 2009) (citing Restatement (Second) of Torts § 224 comment a (1965)).  "Conversion is not excused by care, good faith, or lack of knowledge . . . . A person who mistakenly believes that his or her conduct is legal may nonetheless commit conversion."  18 Am. Jur. 2d § 3 (2008).  Moreover, conversion applies only to interference with tangible property.  Video Pipeline, Inc. v. Buena Vista Home, Entm't, Inc., 210 F. Supp. 2d 552, 568 (D.N.J. 2002).

Drawing all reasonable inferences in favor of Manor, the evidence in the record fails to demonstrate that Manor improperly exercised control over property owned by Trico.  Trico claims that Manor "improperly, deliberately, without authorization and at expense to Trico, used his gas credit card while employed by Trico for personal and non-business related use" and "failed to return a significant amount of Trico property in his possession."  (Pl.'s Br., at 25). However, the sole evidence Trico offers to support its contention is that Manor refueled his vehicle twenty-seven times during an eighteen-day period in May of 2008.  (Doc. No. 41 ¶ 19). However, drawing all reasonable inferences in favor of Manor, this evidence proves only that Manor used a significant amount of gas while performing his work related duties; not that Plaintiff conducted any business unrelated to his duties at Trico.  In essence, the amount of gas

Manor used during a one month period does not prove <u>how</u> he used that gas.  Moreover, Trico

points to no tangible item Manor kept when he resigned from his position with Trico.  Instead,

Trico states in summary fashion that Manor failed to return a significant amount of Trico

property in his possession.  (Pl.'s Br., at 25).  Without more, Trico fails to meet its burden of

proving that Manor failed to return any tangible property owned by Trico after his resignation.

<u>See</u> <u>Celotex</u>, 477 U.S. at 325 (noting that the moving party may satisfy its burden by

"produc[ing] evidence showing the absence of a genuine issue of material fact").  Accordingly,

the Court will deny Trico's motion for summary judgment on the conversion claim.

### D.  Reasonable Attorneys' Fees and Costs

In the Third Circuit, "the right of a party or an attorney to recover attorney's fees from

another party in a diversity action is a matter of state substantive law."  <u>Mitzel v. Westinghouse</u>

<u>Elec. Corp.</u>, 72 F.3d 414, 417 (3d Cir. 1995) (citing <u>Alyeska Pipeline Serv. Co. v. Wilderness</u>

<u>Soc'y</u>, 421 U.S. 240, 260 n.31 (1975)).  New Jersey has expressly "adopt[ed] the 'American

Rule,' which prohibits recovery of attorneys' fees by the prevailing party against the losing

party."  <u>Myron Corp. v. Atl. Mut. Ins. Corp.</u>, 4 A.3d 999, 1001 (N.J. 2010).  Thus, departure

from the American Rule is appropriate only "where there is 'express authorization by statute,

court rule or contract,'" or "when the interests of equity demand it."  <u>In re Estate of Vayda</u>, 875

A.2d 925, 930 (N.J. 2005).

Pursuant to the Employment Agreement, Trico is entitled to the reasonable attorneys'

fees and costs of bringing this action.[2]  The burden of proving that a request for attorneys' fees is

reasonable rests on the party seeking the fees.  <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d

Cir. 1990).  To satisfy this burden, the petitioner must "submit evidence supporting the hours

---

[2] Paragraph 9 of the contract between Manor and Trico provides:  "[Manor] agree[s] that [Manor] shall be liable to
pay [Trico's] reasonable attorney's fees and costs in any successful action to enforce this agreement."  (Pl.'s Br. Ex.
9 ¶ 9).

worked and rates claimed."  Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  The

district court enjoys a "great deal of discretion" to adjust the awarded fee in light of the

opponent's objections.  Id.  The starting point of the district court's analysis should be the

lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate."  Id. (quoting Hensley, 461 U.S. at 433).  "The Court may not make

a finding of reasonableness based on a generalized sense of appropriateness, but must rely on the

record."  Acosta v. Nat'l Packaging, Inc., No. 09-701, 2010 WL 3001191, at *8 (D.N.J. July 28,

2010) (citing Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 361 (3d Cir. 2001)).

      Here, the Court cannot determine whether Trico's request for attorneys' fees is

reasonable because Trico failed to submit any documentation containing the number of hours

counsel devoted to this case or the reasonable hourly rate.  Instead, Trico's request consists

solely of its representation that "the Company has incurred $184,857.46 in legal fees and costs to

pursue legal action against Manor from inception through July 27, 2010."  (Pl.'s Br., at 29-30).

Without more, this Court lacks the information necessary to determine reasonableness.

Accordingly, the Court will deny Trico summary judgment on the request for attorneys' fees.[3]

See Acosta v. Nat'l Packaging, Inc., No. 09-701, 2010 WL 3001191, at *3 (D.N.J. July 28, 2010)

(awarding plaintiff $108,588.84 in damages and $3,087.50 in attorneys' fees and costs, but

postponing award of prejudgment interest and liquidated damages because plaintiff failed to

provide sufficient documentation to support its proposed interest rate).

### E.  Damages

      Trico seeks summary judgment on its claim for lost profits in the amount of

$1,118,000.00.  To support that request, Trico offers an affidavit filed by the President and

---

[3] Although Trico is not entitled to summary judgment on its request for attorneys' fees, Trico is entitled to costs.
See Pl.'s Br. Ex. 9 ¶ 9 ("[Manor] agree[s] that [Manor] shall be liable to pay [Trico's] reasonable attorney's fees and
costs in any successful action to enforce this agreement.").

owner of Trico, Mr. Kenneth F. Pustizzi.  According to Mr. Pustizzi, "Trico lost at least

$1,118,000.00 during the twelve-month period following Mr. Manor's resignation from Trico."

(Pustizzi Decl. ¶ 5).  Trico calculates lost profits "based upon the lost revenue from rentals less

the overhead of maintaining, servicing and/or transporting equipment to a customer's site."  (Id.

¶ 6).  Mr. Pustizzi also claims that immediately after the Court entered its injunction on June 15,

2009, Trico recovered business that had gone to Skyworks because of Manor's actions.  (Id. ¶

10).

      The New Jersey Supreme Court has held that "[l]oss of profits, where based on sound

fact and not mere opinion evidence without factual support, is recognized as a proper measure of

damages if 'capable of being estimated with a reasonable degree of certainty.'"  Stanley Co. of

Am. v. Hercules Powder Co., 108 A.2d 616, 626 (N.J. 1954) (quoting Rempfer v. Deerfield

Packing Corp., 72 N.J. 204, 208 (N.J. 1950)).  Thus, a party must show that "profits were lost as

a result of the actionable conduct complained of."  V.A.L. Floors, Inc. v. Westminster Cmtys.,

Inc., 810 A.2d 625, 629 (N.J. Super. Ct. App. Div. 2002).  "Anticipated profits that are remote,

uncertain or speculative are not recoverable."  Desai v. Bd. of Adj. of Phillipsburg, 824 A.2d

166, 172 (N.J. Super. Ct. App. Div. 2003).

      However, a considerable amount of speculation is permissible concerning the award of

damages.  V.A.L. Floors, Inc., 810 A.2d at 630.  As the New Jersey Supreme Court held in

Tessman v. Grosner, 128 A.2d 467 (N.J. 1957), "[t]he rule relating to the uncertainty of damages

applies to the uncertainty as to the fact of damage and not as to [the] amount, and where it is

certain that damage has resulted, mere uncertainty as to the amount will not preclude the right to

recovery."  Id. at 472 (emphasis added).  The mere fact that a plaintiff cannot "fix its damages

with precision" does not preclude recovery of damages altogether.  Id.  Thus, "[p]rofits lost by

reason of breach of contract may be recovered 'if there are any criteria by which probable profits can be estimated with reasonable certainty.'" Id. "Past experience of an ongoing, successful business provides a reasonable basis for the computation of lost profits 'with a satisfactory degree of definiteness.'" Id. at 631 (citing Weiss v. Revenue Bldg. & Loan Ass'n, 182 A. 891, 893 (N.J. 1935)).

Here, Trico claims that it is entitled to $1,118,000.00 in damages for lost profits. It is clear from the record that Trico suffered some measure of damages as a result of Manor's breach. The year after Manor resigned from Trico, Trico suffered a loss of $1,118,000.00 in revenue. (Pustizzi Decl. ¶ 6). Moreover, shortly after the Court enjoined Manor from working for Skyworks, Trico recovered some of the business it lost to Skyworks due to Manor's allegedly unlawful behavior. (Pustizzi Decl. ¶ 10). The Court finds that Trico met its burden of proving some damages with reasonable certainty. See Tessman v. Grosner, 128 A.2d at 472; V.A.L. Floors, Inc., 810 A.2d at 632 (finding that if jury could find that defendant breached contract with plaintiff, then "it is certain that plaintiffs are entitled to some damages").

However, although the evidence demonstrates that Trico is entitled to some damages, Trico fails to meet its burden of proving to a reasonable certainty that the damages it requests ($,118,000.00) are the result of Manor's actions. In fact, Trico offers no evidence that its lost revenue was caused by Manor's allegedly unlawful conduct. Rather, Trico assumes that because it suffered an overall decline in revenue in the territorial area for which Manor was responsible, the loss of $1,118,000.00 was the result of Manor's actions. Without more, the fact that Trico suffered a loss of $1,118,000.00 in total revenue during the twelve months after Manor's departure does not prove that Manor's actions actually caused Trico's loss. Moreover, there is no evidence in the record that Skyworks' revenue increased during the period Trico's revenue

decreased, or that Trico's business with Dean was worth $118,000.00.  Therefore, drawing all

reasonable inferences in favor of Manor, this Court cannot conclude that Trico is entitled to

$1,118,000.00 in lost profits as a result of Manor's allegedly unlawful conduct.  Accordingly,

Trico's request for summary judgment on the issue of damages is denied.

## III.    CONCLUSION

For the reasons discussed above, Trico's motion for summary judgment is granted in part

and denied in part.  Summary judgment is GRANTED with respect to Trico's claims for breach

of contract, and Trico's request for costs.  However, with respect to Trico's claims for:  (1)

misappropriation of trade secrets and confidential information, (2) tortious interference with

prospective economic advantage; (3) unfair competition; (4) breach of the duty of loyalty, (3)

breach of the covenant of good faith and fair dealing, (5) unjust enrichment, (6) civil conspiracy,

(7) destruction of evidence; (8) conversion; (9) attorneys' fees; and (10) damages, summary

judgment is DENIED.  An appropriate order shall issue today.

Date:   2/22/2011                                                     /s/ Robert B. Kugler
                                                                             ROBERT B. KUGLER
                                                                             United States District Judge